## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NORMAN JOE LANGFORD, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-08-389-F |
| | ) | |
| GRADY COUNTY DETENTION CENTER, | ) | |
| *et al.*, | ) | |
| Defendants. | ) | |

### <u>SUPPLEMENTAL REPORT AND RECOMMENDATION</u>

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Defendants have filed the following dispositive motions: (1) Motion for Summary Judgment of Defendant Shane Wyatt and Brief in Support [Doc. #87]; (2) Motion for Summary Judgment of Defendants Bill Daughtery and Larry McGill and Brief in Support [Doc. #88]; (3) Motion to Dismiss of Defendants Kieran McMullen and Jack Porter and Brief in Support [Doc. #155]; (4) Motion to Dismiss of Defendants Chris Angel and John Mosley and Brief in Support [Doc. #157]; and (5) Motion to Dismiss of Defendant Grady County Detention Center and Brief in Support [Doc. #143]. In addition, the Court has received a Special Report [Doc. #36]. Plaintiff has responded to each of the motions and Defendants, where appropriate or necessary, have replied.

Also pending before the Court is Plaintiff's Motion to Compel Discovery and Brief in Support [Doc. # 165].

For the reasons set forth below, it is recommended that Defendant Wyatt's Motion for Summary Judgment be granted in part and denied in part, Defendants Daughtery and McGill's Motion for Summary Judgment be granted in part and denied in part, Defendants McMullen and Porter's Motion to Dismiss be denied, Defendants Angel and Mosley's Motion to Dismiss, construed as a motion for summary judgment, be granted, Defendant Grady County Detention Center's Motion to Dismiss be granted and Plaintiff's Motion to Compel Discovery be denied.

## I.   Factual Background / Plaintiff's Claims

Plaintiff is in the custody of the Oklahoma Department of Corrections and is currently incarcerated at Lawton Correctional Facility, Lawton, Oklahoma.  Plaintiff's claims in this lawsuit, however, arise from his incarceration at the Grady County Detention Center (GCDC) in Chickasha, Oklahoma, for the time period March 2006 through February 2008.  For the majority of this time period, Plaintiff was incarcerated as a pretrial detainee.

On March 16, 2009, with leave of court, Plaintiff filed a Second Amended Complaint [Doc. #131].  In Count I, Plaintiff challenges the conditions of his confinement in maximum security while at GCDC.  He alleges that for a period of three days during the month of November 2006, he had no drinking water, the water in his cell was turned on only twice a day long enough to flush the toilet, he was fed only cold sandwiches and he had no mattress, no towel and only minimal clothing.  In Count II of the Second Amended Complaint, Plaintiff again challenges the conditions of his confinement during his incarceration at GCDC.  Plaintiff alleges that he was denied recreation (inside or outside) for a period of

nearly two years.  In Count III of the Second Amended Complaint, Plaintiff claims he was strapped to a chair for twelve hours following a suicide attempt in December 2007.  Plaintiff claims the conditions of his restraint constitute cruel and unusual punishment.  Plaintiff further alleges he suffers from mental illness and was denied medication and treatment for his illness for a period of approximately two years, encompassing the time period both before and after his December 2007 suicide attempt.

As relief, Plaintiff seeks damages in the sum of $213,000.

Plaintiff names the following Defendants: (1) Shane Wyatt, Warden of GCDC; (2) Bill Daughtery, Lieutenant, GCDC; (3) Larry McGill, Lieutenant, GCDC[1]; (4) Grady County Detention Center; (5) Grady County Criminal Justice Authority; (6) Kieran McMullen, Sheriff and Trustee of the Grady County Criminal Justice Authority; (7) Jack Porter, Trustee of the Grady County Criminal Justice Authority; (8) Chris Angel, Trustee of the Grady County Criminal Justice Authority; and (9) John Mosley, Trustee of the Grady County Criminal Justice Authority.[2]

---

[1] Plaintiff has incorrectly spelled Defendant McGill's last name as MaGuil, and the style of the case as entered in the Court's docket, therefore, reflects this misspelling.  Throughout this Supplemental Report and Recommendation, the Court uses the proper spelling of the Defendant's name, McGill.

[2] The Motions for Summary Judgment filed by Defendants Daughtery and McGill and Defendant Wyatt were filed before Plaintiff filed his Second Amended Complaint.  The further amendment of the Complaint, however, did not change the nature of Plaintiff's claims against these Defendants.  For ease of reference, and to avoid confusion in the record, the Court has referred only to the Second Amended Complaint in identifying Plaintiff's claims.

## II.     Standard of Review on Motions for Summary Judgment

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).   In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992); *Manders v. State of Oklahoma*, 875 F.2d 263, 264 (10th Cir. 1989).   A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   "Material facts" are "facts that might affect the outcome of the suit under the governing law." *Id*.

When a Court-ordered *Martinez* report is part of the record, the report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).   "The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury." *Id*.

## III.   Deliberate Indifference Standard

The standard governing each of Plaintiff's claims – whether the claims arose during his incarceration as a pretrial detainee (governed by the Fourteenth Amendment's Due Process Clause) or after he was convicted (governed by the Eighth Amendment's Cruel and Unusual Punishment Clause)  – is that of deliberate indifference.[3] To establish deliberate indifference based on either inhumane conditions of confinement or failure to attend to medical needs, a section 1983 plaintiff must satisfy both an objective component and a subjective component.   Under the objective component, the deprivation alleged must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   Under the subjective component, the official must have acted with a sufficiently culpable state of mind, namely deliberate indifference to inmate health or safety."   *Id*.   With regard to this second requirement, "a prison official cannot be found liable under the Eighth

---

[3]In his response to the motion for summary judgment filed on behalf of Defendants Daughtery and McGill, Plaintiff states that for one year and ten months of his incarceration at GCDC, he was a pretrial detainee and that he remained at GCDC for a period of 45 days after conviction.  *See* Plaintiff's Response [Doc. #127] at electronic page 24.  Plaintiff's status, however, as either a pretrial detainee or convicted prisoner does not affect analysis of his claims.  While Plaintiff's claims as a pretrial detainee are governed by the Fourteenth Amendment's Due Process Clause, the Tenth Circuit has determined the scope of this protection is co-extensive with the Eighth Amendment.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.") (citation omitted); *see also Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) ("Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, [and courts in this circuit] appl[y] an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.").

Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." *Id.* at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id*. at 836-37.

With these standards in mind, the Court proceeds to analysis of Plaintiff's claims and the pending dispositive motions.

## IV.   **Motion for Summary Judgment by Defendants McGill and Daughtery**

### A.   **Individual Capacity Claims**

Defendants McGill and Daughtery assert the defense of qualified immunity as to each of Plaintiff's claims brought against them in their individual capacities. Defendants contend the alleged deprivations which Plaintiff endured do not rise to the level of constitutional violations. *See* Defendants' Motion at 18.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In qualified immunity cases at the summary judgment stage, a plaintiff must clear two hurdles. The plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly

6

established at the time of the alleged unlawful activity." *Swanson v. Town of Mountain View, Colo.*, __ F.3d __, No. 08-1105, 2009 WL 2516315 at * 2 (10th Cir. Aug. 19, 2009) (for publication) (*citing Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815-16, 818 (2009)); *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

In raising the qualified immunity defense, Defendants do not contend qualified immunity should be granted on grounds of lack of clearly established federal law.  For purposes of addressing the defense at this stage, therefore, the Court assumes the law governing Plaintiff's claims is clearly established.[4]

### 1.    Count I – Conditions of Maximum Security Confinement

In Count I of the Second Amended Complaint, Plaintiff claims he was subjected to unconstitutional conditions of confinement for a three-day period while detained in a maximum security cell in GCDC's old jail.[5]  Plaintiff alleges he was removed from the new jail on November 17, 2006, for kicking a window out in his cell.[6]  Plaintiff was immediately

---

[4]Indeed, Tenth Circuit precedent supports a finding that clearly established federal law provides for Eighth Amendment protection as to each of the conditions about which Plaintiff complains. *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir.1980) (adequate clothing and heating); *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (outdoor exercise and recreation); *Ramos*, 639 F.2d at 574 (psychological or psychiatric care).

[5]According to the allegations of the parties, the GCDC facilities include both an old jail and a new jail.  The record indicates Defendant Daughtery oversees the operations of the old jail.  *See* Plaintiff's Supplemental Brief [Doc. #177], Exhibit 1, Jury Trial Transcript at 211.  Defendant McGill's job duties include "the general operations of the main detention facility."  *See* Plaintiff's Response [Doc. #127], Exhibit 15, Interrogatory Responses of Defendant McGill, Response No. 4.

[6]Defendants allege Plaintiff was removed from the new jail for attempting to escape.  *See* Defendants' Motion, Material Facts at 3, ¶ 9.  Plaintiff contends he was never charged with escape. He submits a Judgment and Sentence entered on February 26, 2008, in the District Court of Grady
(continued...)

taken to the old jail and placed in maximum security where he remained for a total of sixty-seven days.  In this lawsuit, Plaintiff challenges only the conditions for the first three days in maximum security, from November 17, 2006 through November 19, 2006.

Plaintiff alleges Defendants Daughtery and McGill were the officers responsible for Plaintiff's placement in the old jail's maximum security unit and that these Defendants made the decision to impose the restrictive conditions on Plaintiff for the three-day period at issue. Plaintiff claims he was fed only cold sandwiches, denied all water, the water was turned off in his cell and only turned on briefly every 12 hours to allow him to flush the toilet, the cell had no mattresses or blankets, and the only clothing he was allowed to wear was a pair of boxers and a t-shirt.[7]  Plaintiff alleges he was extremely cold in his cell.   According to Plaintiff, he tried to stay warm by wrapping around his feet the Saran wrap from the sandwiches he was fed.  When he was caught using the Saran wrap for this purpose, he alleges the sandwiches were then handed or thrown through the bean hole unwrapped.  *See* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 45-46.

The Special Report [Doc. #36] fails to address the factual allegations of Count I of the Complaint.   Instead, in purporting to address Count I, the Special Report erroneously

---

[6](...continued)
County, State of Oklahoma, Case No. CF-2006-481, showing that he was convicted of Bringing Contraband Into Jail / Penal Institution and the date of the offense is shown as November 17, 2006. *See* Plaintiff's Response [Doc. #127], Exhibit 7.  While the parties dispute the exact nature of the infraction leading to Plaintiff's placement in maximum security, the specific offense attached to Plaintiff's conduct is not dispositive.

[7]According to Plaintiff's deposition testimony, the t-shirt was provided to him by another inmate, not by prison officials.  *See* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 45.

references Plaintiff's placement in "cell H126-SLAM" nearly one year later when, on December 28, 2007, Plaintiff attempted to commit suicide.  *See* Special Report at 2-3. Therefore, Defendants' citation to the Special Report as a basis for factually disputing Plaintiff's claims in Count I is erroneous and does not satisfy the movant's burden under Fed. R. Civ. P. 56 as the facts referenced have no relevance to the claim.

The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Because the sufficiency of a conditions of confinement claim depends upon "the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (citations and internal quotation marks omitted). In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration. *Id*. at 973 (citations and internal quotation marks omitted); *accord Mitchell v. Maynard*, 80 F.3d 1433, 1442-43 (10th Cir. 1996) (stating that "[i]t is important to consider the conditions of confinement as a whole" and citing cases where deprivation of human needs found to be Eighth Amendment violation).

### a.   Denial of Hot Meals

The Court finds Plaintiff's factual allegations regarding the meals provided to him are not sufficiently serious to rise to the level of a constitutional violation.  Plaintiff does not

9

challenge the cold sandwiches fed to him as nutritionally inadequate nor does he claim he was required to skip meals. The fact that he was not served hot meals is insufficient to state a violation of his Eighth Amendment rights, particularly since he was fed sack meals for a period of no more than three days. *Compare Rogers v. Holt*, 49 Fed. Appx. 231, 232 (10th Cir. Oct. 11, 2002) (unpublished op.) (fact that prisoner was fed sack lunches instead of regular meals for a period of five days did not constitute sufficiently serious deprivation to state an Eighth Amendment claim); *Sawyer v. Jeffries*, No. 08-3016-SAC, 2008 WL 489275 at *3 (D. Kan. Feb. 20, 2008) (unpublished op.) (no Eighth Amendment violation where plaintiff placed on sack meals for two weeks). Defendants, therefore, are entitled to summary judgment on grounds of qualified immunity with respect to Plaintiff's claim that being fed sack meals resulted in unconstitutional conditions of confinement.

### b.    Denial of Water

In deposition testimony, Plaintiff described the maximum security cell. He testified that the cell includes a water jug as the only source for drinking water and that inmates had to keep their own drinking cup. *See* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 39-41, 45. Plaintiff testified that for the three-day period at issue, the water jug was removed from the cell and he was not provided a cup. He further testified that the water to the cell was turned off and "[t]hey wouldn't turn the water on for the toilet except once every 12 hours during a shift change . . . [j]ust long enough to flush the toilet if you were lucky." *See id.* at 41, 45.

In moving for summary judgment Defendants do not dispute Plaintiff's factual allegations or deposition testimony regarding the denial of water (or, for that matter, any of the conditions which serve as the basis of Plaintiff's claims in Count I).   For example, Defendants do not provide any evidence that Plaintiff received fluids (such as juice, milk or water) with his meals or dispute that Plaintiff was denied all water for the three-day period at issue.

 Plaintiff's factual allegations and testimony with respect to the denial of drinking water describe sufficiently serious conditions to satisfy the objective component of an Eighth Amendment claim.  *See Purkey v. McKune*, No. 01-3019-JWL, 2004 WL 2413455 at *4 (D. Kan. Oct. 26, 2004) (unpublished op.) (prisoner's allegations that he was deprived of drinking water for three days was a sufficiently serious condition to implicate constitutional protection).  *See also, Dellis v. Corrections Corp. of America*, 257 F.3d 508, 512 (6th Cir. 2001) (if true, Plaintiff's allegations that he was deprived drinking water for three days when the prison's water supply went out and during that three-day period given only two half pints of milk and one sixteen and one-half ounce bottle of water stated a viable Eighth Amendment claim); *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (finding that inmates presented a triable Eighth Amendment claim where they alleged, among other things, that they received inadequate drinking water for four days).

Nor do Defendants contend they lacked the requisite subjective state of mind which, as set forth above, requires a showing that Defendants knew of excessive risks to Plaintiff's health and safety and purposely disregarded those risks.  Defendants do not, for example,

claim they lacked knowledge of the conditions of Plaintiff's confinement. Instead, Defendants' sole basis for defending against this claim is that due to Plaintiff's attempted escape, valid security reasons existed for placing Plaintiff in maximum security and, therefore, Defendants were justified in subjecting Plaintiff to the conditions he describes. *See* Defendants' Motion at 11 ("[V]alid reasons existed for placing Plaintiff in this section of the jail – **he had broken a window and attempted to escape from the facility by using a rope made from torn sheets and blankets**.") (emphasis in original).[8]

While Defendants state that "some clothing and items were taken from [Plaintiff] for security reasons . . . .", *see* Defendants' Motion at 11, Defendants wholly fail to address why security reasons required that Plaintiff be denied *water*. Because Plaintiff has alleged facts sufficient to establish the objective and subjective components of an Eighth Amendment claim, Defendants are not entitled to summary judgment on grounds of qualified immunity. And, disputed issues of material fact remain as to Plaintiff's claim that the denial of water subjected him to unconstitutional conditions of confinement.

### c.      Lack of Adequate Heat, Clothing, Bedding

Plaintiff also challenges the conditions of confinement claiming that his limited clothing, lack of a mattress and no blankets for three days in November caused him to suffer

---

[8]Defendants also contend the decision to place Plaintiff in maximum security does not implicate a constitutional right and deference must be given to the placement decisions of prison administrators. Plaintiff brings no claim challenging the placement decision itself. He only challenges the conditions of confinement in maximum security. Therefore, the Court need not address Defendants' contention.

from extreme cold. The Tenth Circuit has held the Constitution mandates that adequate heat be provided to inmates. *See Ramos, supra*, 639 F.2d at 568. *See also Hawkes v. Wyoming Dept. of Corr. Honor Conservation Camp*, No. 97-8006, 1997 WL 545594 at *2 (10th Cir. Sept. 4, 1997) (unpublished op.) ("[A]n allegation of inadequate heating may state an Eighth Amendment violation.")(*citing Ramos*, 639 F.2d at 568). The Tenth Circuit has found as insufficient to support an Eighth Amendment claim allegations that a prisoner was placed in a damp "but not freezing" isolation cell for two days where he had a blanket, a bed and food, *see Ogbolu v. McLemore*, No. 96-6275, 1997 WL 49449 at * 2 (10th Cir. Feb. 7, 1997) (unpublished op.); that a prisoner was placed in a cold, unheated detention cell for five days, but did not allege he was denied "adequate bedding, blankets, etc." to help him deal with the cold, *see Hawkes*, 1997 WL 545594 at *2; and that a prisoner spent four nights and five days in a stripped basement intake cell but had "minimal" clothing and bedding, *see Estrada v. Kruse*, No. 01-1381, 2002 WL 399204 (10th Cir. March 15, 2002) (unpublished op.).

Here, Plaintiff's allegations do not fit within the contours of any of these cases. He claims for a period of three days he faced significant cold, wearing only boxers and a t-shirt with no blankets or bedding whatsoever. The Supreme Court has recognized that where conditions have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth . . . the combination of such conditions might give rise to an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991).

Conditions that may "in combination" establish an Eighth Amendment claim, include "for example, a low cell temperature at night combined with a failure to issue blankets." *Id.*

Viewing the facts supported by competent evidence and drawing reasonable inferences from those facts in the light most favorable to Plaintiff, Plaintiff's factual allegations are sufficient to raise genuine issues of material fact relating to whether a lack of adequate protection from the cold for the three-day period at issue was objectively sufficiently serious to violate Plaintiff's right to humane conditions of confinement. *Compare Pellum v. Burtt*, No. 9:05-3339-JFA-GCK, 2008 WL 759084 at * 25 (D.S.C. March 20, 2008) (unpublished op.) (objective component of Eighth Amendment claim stated where prisoner had shown he was housed in a cell for four days during the month of December without a mattress, a blanket or any extra clothing) (collecting supporting federal circuit court of appeals and district court cases).

Again, Defendants do not dispute Plaintiff's allegations or contend the conditions complained of are not sufficiently serious.  For example, Defendants do not provide any evidence about the temperatures inside the old jail, or what the outside temperatures were on the dates in question. And, though Defendants contend security concerns justified their actions, Defendants fail to provide specific facts demonstrating that penological reasons required imposition of these conditions.  Defendants conclusory assertion, standing alone, is insufficient to entitle Defendants to judgment as a matter of law on this claim. *Compare Mitchell,* 80 F.3d at 1443 (where alleged deprivations were numerous and included lack of heat, lack of clothing and bedding and the deprivation of exercise, court may not "blindly

14

acquiesce" to prison officials' authority to maintain security as sufficient justification for deprivations; instead, "it [is] for the jury to determine the extent of the deprivations and the credibility of the [prison official] and his intentions"). *See also Johnson v. California*, 543 U.S. 499, 511 (2005) (noting that "the integrity of the criminal justice system depends on full compliance with the Eighth Amendment" and that "[m]echanical deference to the findings of state prison officials in the context of the eighth amendment would reduce that provision to a nullity in precisely the context where it is most necessary") (internal quotation marks omitted).  Under these circumstances, Defendants Daughtery and McGill are not entitled to summary judgment with respect to the claim raised in Count I of the Second Amended Complaint challenging the cold conditions to which Plaintiff was subjected for the three-day period in November 2006.

In sum, Defendants are entitled to summary judgment on grounds of qualified immunity with respect to the claim raised in Count I challenging the sack meals provided to Plaintiff for the three-day period at issue in November 2006.  As to all remaining conditions of confinement challenged in Count I, Defendants' motion for summary judgment should be denied.  Plaintiff has alleged facts sufficient to demonstrate a violation of his constitutional rights.  The combination of conditions Plaintiff faced during this time period, Defendants' failure to provide any evidence to discredit Plaintiff's factual allegations as to both the objective and subjective component of Plaintiff's claims, and Defendants' failure to provide specific factual support for contending Plaintiff's conditions were justified due

to penological concerns, all require denial of Defendants' motion for summary judgment. Genuine issues of material fact remain as to whether Defendants should be held liable for the conditions to which Plaintiff was subjected.

### 2.    Count II – Denial of Recreation and Outdoor Exercise

It is undisputed that Plaintiff was incarcerated at GCDC from March 17, 2006 through February 26, 2008 – a total of twenty-three months.  It is also undisputed that Plaintiff spent approximately fourteen of those twenty-three months in the old jail.  The parties have not, however, provided the dates of Plaintiff's incarceration in the old jail.[9]

The record is silent as to the reasons why Plaintiff remained in the old jail after his release from maximum security.  Although Defendants state generally (and without evidentiary support) that to move inmates from the old jail to the new jail for purposes of recreation posed a security risk, *see* Special Report at 3, Defendants do not state any reasons for keeping Plaintiff in the old jail once he was released from maximum security.

Moreover, Plaintiff alleges that he was not only denied access to outdoor exercise while incarcerated at the old jail, but that he also was denied access to outdoor exercise during his incarceration in the new jail.  Defendants respond to this with a speculative assertion that while in the new jail Plaintiff "would have been provided the opportunity for

---

[9]It is clear from the record that Plaintiff was in the old jail at least beginning in November 2006 for a period of approximately sixty-seven days because, as discussed in relation to the claims raised in Count I, Plaintiff was placed in the old jail in maximum security for that period of time. While no party has provided the Court with information to confirm this, it seems logical to assume that from that time forward, Plaintiff remained in the old jail and that his fourteen months in the old jail ran from November 2006 until his release from GCDC in February 2008.

recreation."  *See* Motion at 4, Material Fact ¶ 16 (*citing* Special Report at 3) ("[W]hile he

was incarcerated in the new jail it is *likely* he would have been provided with the opportunity

for recreation time.") (emphasis added).  Defendants submit no evidentiary support – either

in their Motion or by means of the Special Report – for this assertion.

Plaintiff testified during his deposition that he might have been allowed recreation a

few times while in the new jail during the first few months of his incarceration.  *See*

Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 64-65.  But Plaintiff testified he had

no fresh air for almost two years and that he suffered adversely from this deprivation:

> I was put in Grady County jail on or about March 17, 2006, and left –
> and left on or about February 26, 2008.  I was in the new jail for a while, then
> placed in the old jail for over one year.  There is an inside recreation room at
> the new jail, but after being there for a few months, approximately three
> months, I was told by jailors that only federal inmates could go to and use the
> gym, the rec room.  I've had no inside or outside recreation for almost two
> years.  I've wrote a request of staffs several times on this and they, the jailors,
> will not answer them.  I've had no fresh air for almost two years.  Most
> inmates do not stay in the county jail as long as I do.  This is cruel and
> inhumane punishment.  I would not treat an animal this way, and I should have
> – I should have had some type of recreation.  My health has suffered because
> of this.  This has made my depression so much worse that it already was.  Also
> Lieutenant Bill Daughtery told me that by filing lawsuits and grievances on
> these issues, I would be placed – I would be put someplace I don't want to be
> which means strapped to a chair and/or put in cells where other inmates would
> cause violence to me.

*See id*. at 63-64.  *See also id*. at 78-80 (discussing weight fluctuation, paranoia, increased

depression).[10]

---

[10]Contrary to Plaintiff's testimony, Defendants erroneously allege that "Plaintiff concedes
no nurse or doctor ever diagnosed him with an illness specifically related to not having sunlight or
(continued...)

The Tenth Circuit has recognized "substantial agreement among the cases" that "some form of regular *outdoor* exercise is extremely important to the psychological and physical well being of inmates."  *Fogle v. Pierson*, *supra*, 435 F.3d at 1260 (*quoting Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) and *citing Perkins v. Kansas Dep't. of Corrections*, 165 F.3d 803, 810 (10th Cir. 1999)).  *See also Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) ("Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment.").

The Tenth Circuit determined in *Fogle* that "a factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping [the prisoner] in administrative segregation."  *Fogle*, 435 F.3d at 1260.  In an unpublished opinion decided after *Fogle*, the Tenth Circuit held that a one-year deprivation of outdoor exercise "is not sufficiently serious

---

[10](...continued)
fresh air."  *See* Defendants' Motion, Material Facts at 3, ¶ 6 (*citing* Ex. 1, Plaintiff's Deposition, 86:2-20).  Defendants misstate the record.  Plaintiff's actual testimony reads:

> Q.     Did any doctor or medical professional ever diagnose you with having an illness specifically related to not having sunlight or fresh air?
>
> *         *         *
>
> A.     I haven't asked any doctor or nurse that question, so I wouldn't know how to answer that.

*Id*.

18

to implicate the Eighth Amendment." *Ajaj v. United States*, 293 Fed. Appx. 575, 584 (10th Cir. Sept. 15, 2008) (unpublished op.).

This case falls squarely between a one-year and three-year deprivation. The Court declines, therefore, to find as a matter of law that Plaintiff's deprivation is not sufficiently serious. Moreover, Plaintiff does not allege only a denial of outdoor recreation, but a denial of any recreation at all.[11]

As with the claims raised in Count I, in addressing the denial of recreation, Defendants have not provided specific evidence or rationale to support a finding that Plaintiff's deprivation of exercise served a legitimate penological interest. Therefore, to the extent Defendants contend security concerns prevented the provision of recreation to Plaintiff, their contention is conclusory and insufficient to serve as a basis for granting summary judgment.

Defendants have not addressed the subjective component of the Eighth Amendment analysis. In *Fogle*, the Tenth Circuit found that the very fact that a risk is obvious may lead the factfinder to conclude a prison official knew of a substantial risk of harm and therefore,

---

[11]Defendants contend Plaintiff had room to exercise in the maximum security cell. *See* Defendants' Motion, Material Fact at 4, ¶ 14. Plaintiff disputes the accuracy of Defendants' contention, pointing out Defendants' mischaracterization of his deposition testimony. *See* Plaintiff's Response at electronic page 9. The ability of Plaintiff to exercise in his cell, however, is not dispositive. In *Fogle*, for example, the plaintiff acknowledged that he was "allowed access to a cell with a pull-up bar a few times a week." The Tenth Circuit found the district court had erred as a matter of law when it concluded, in reliance on this fact, that a prisoner must allege denial of *all* exercise to present an "arguable" claim. *Fogle*, 435 F.3d at 1260. Instead, it is the denial of *outdoor* exercise that is critical to the prisoner's claim. *Id*. Moreover, Defendants have not addressed Plaintiff's ability to exercise in any of the cells where he was placed outside of maximum security and, as discussed, Plaintiff was only in maximum security for sixty-seven days.

that the district court erred in finding the prisoner had not alleged prison officials acted with deliberate indifference.  *Fogle*, 435 F.3d at 1260.  *See also Mitchell, supra*, 80 F.3d at 1442 (" Deliberate indifference does not require a finding of express intent to harm.").  A three-year deprivation, the court concluded, sufficiently alleged deliberate indifference by prison officials.  *Fogle*, 435 F.3d at 1260.  As in *Fogle*, Plaintiff's near complete denial of exercise for a period of approximately two years constitutes an obvious risk that may lead the factfinder to conclude Defendants knew of a substantial risk of harm.[12] Plaintiff has alleged facts sufficient to demonstrate a violation of his constitutional rights and, therefore, Defendants are not entitled to summary judgment on grounds of qualified immunity. Disputed issues of material fact preclude summary judgment in Defendants favor on Plaintiff's claims raised in Count II of the Second Amended Complaint.

### 3.  Count III – Deliberate Indifference to Plaintiff's Mental Health

#### a.  Use of Restraint Chair

In Count III of the Second Amended Complaint Plaintiff first claims his constitutional rights were violated when he was placed in a restraint chair for twelve hours following an attempted suicide on December 28, 2007.[13]  Plaintiff alleges he was strapped to the restraint

---

[12]This conclusion is further compelled by the fact that Plaintiff already suffered from mental health problems, exacerbated by the denial of outdoor exercise, and, as discussed *infra*, was denied any treatment for his mental health needs during his incarceration at GCDC despite his long history of mental health problems and two suicide attempts while incarcerated at GCDC.

[13]According to Plaintiff's allegations he attempted suicide after inmates threatened him with violence.  Plaintiff alleges Defendants McGill and Daughtery put him in a cell with these inmates despite knowledge of the threats.  *See* Plaintiff's Second Amended Complaint, Supporting Facts at electronic page 10.

(continued...)

chair even though he was not violent, combative or argumentative. Plaintiff alleges Defendants McGill and Daughtery strapped him to the chair and directed that Plaintiff remain in the chair for twelve hours. While strapped in the chair, Plaintiff alleges he was forced to sit in his own waste for at least ten hours. Plaintiff claims he suffered bruising to his arms and legs as a result of being strapped in the restraint chair. *See* Second Amended Complaint, Count III, Supporting Facts (electronic page 10); *see also* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 89-97; Defendants' Motion [Doc. #88], Exhibit 1, Plaintiff's Deposition at 102, 103.

Defendants do not dispute use of the restraint chair following Plaintiff's suicide attempt but contend Plaintiff was in the restraint chair for only six hours. *See* Defendants' Motion, Material Facts at 5, ¶ 22. Defendants purport to support this contention with citation to unauthenticated prison logs attached to the Special Report. *See id*. The prison logs are dated from December 28, 2007 through December 31, 2007. *See id*. Attachment 3. Included among the entries for December 28, 2007, there is an entry made at 12:13 p.m. which reads: "I/M Langford in holding chair for attempting suicide." That entry is followed by 13 additional entries which read: "I/M Langford appears OK", spanning a period of

---

[13](...continued)

This was Plaintiff's second suicide attempt at GCDC. He made a prior suicide attempt when he was booked into the facility. *See* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 34-35; *see also* Special Report, Exhibit 2, Grady County Law Enforcement Center / Incidents for Offender / Langford, Norman Joe at electronic page 25.

approximately 6 hours up until 6:30 p.m.[14]  The duty officer responsible for these entries is identified as Larry McBride.  No entry, however, shows the time at which Plaintiff was released from the restraint chair.  Defendants have not provided an affidavit from Larry McBride or other witnesses, or provided other evidence establishing, as an undisputed fact, that Plaintiff was only in the restraint chair for six hours.

Instead, citing only Plaintiff's deposition testimony, Defendants contend that because no clock was in the cell where Plaintiff was kept in restraint there is no way Plaintiff would have known the length of time he was restrained.  *See* Defendants' Motion, Material Facts at 6, ¶ 26 ("The cell with the restraint chair does not contain a clock, so Plaintiff had no way of knowing how long he was restrained in the chair.").[15]  Plaintiff responds that he remained in the chair following a shift change.  According to Plaintiff, an individual named Matt Lane came on duty after the first six hours of his restraint.  *See* Plaintiff's Response at electronic

---

[14]The Court has converted the times which were recorded in the logs in military time.

[15]Plaintiff's deposition testimony cited by Defendants reads as follows:

Q.    How do you know you were there for 12 hours?  What gave you that number?
A.    How do I know?
Q.    Yes.
A.    When I did get somebody to talk to me, then I'd ask, "How much longer? How much longer?" you know, like that.
Q.    Was there a clock in the room or anything like that?
A.    No.
Q.    Did you ask them what time it was during that period of time?
A.    I would ask how much longer, yes.
Q.    Okay.

*See* Defendants' Motion, Exhibit 1, Plaintiff's Deposition at 90.

page 17, ¶ 26. The prison logs attached to the Special Report support this allegation, showing that Matt Lane began his shift at 7:00 p.m. on December 28, 2007.  *See* Special Report, Exhibit 3, Daily Log at 2.  Plaintiff alleges he continued to be strapped to the restraint chair for a number of hours during Matt Lane's shift.  *See* Plaintiff's Response at electronic page 17. *See also* Plaintiff's Response, Exhibit 1, Plaintiff's Deposition at 89, 95-97.

Disputed issues of fact, therefore, exist with respect to the duration of Plaintiff's restraint and for purposes of summary judgment, the Court must construe the record in the light most favorable to Plaintiff.[16]  In addition, Defendants do not dispute, or for that matter even address Plaintiff's allegation that he was denied a bathroom break and forced to sit in his own waste for a substantial majority of the time spent in restraint.  Again, the Court must construe this evidence in the light most favorable to Plaintiff.

Defendants state conclusorily that Plaintiff was only placed in the restraint chair for the protection of himself and jail staff.  Defendants submit no evidence, however, that demonstrates Plaintiff was violent, combative or argumentative.  Nor do Defendants explain why restraint for at least as much as six hours was necessary.  Moreover, Defendants submit no evidence that medical staff were called upon to attend to Plaintiff.[17]  Indeed, as discussed

---

[16]Because disputed issues of material fact exist with respect to the duration of Plaintiff's restraint, the Court expresses no opinion as to whether a six-hour restraint, standing alone, would constitute a sufficiently serious deprivation.

[17]The GCDC's policy regarding use of restraints provides that restraining devices "will be used only for the purposes of prevention of escape, the protection of a prisoner from self-injury or to prevent an inmate from injuring others."  The policy further provides that where an inmate needs protection from self harm, the inmate will first be placed in an isolation cell. Only if the inmate

(continued...)

below, Plaintiff was never provided any medical assistance for his mental health needs for the duration of his incarceration at GCDC.

In *Hope v. Pelzer*, 536 U.S. 730 (2002), the United States Supreme Court found an Eighth Amendment violation where a prisoner was left shirtless, shackled to a hitching post outdoors for seven hours in the sun, denied bathroom breaks and provided water only once or twice. Significant to the Court's holding was the fact that "safety concerns had long since abated by the time petitioner was handcuffed." *Id*. at 738. As the Court found:

> Despite the clear lack of an emergency situation, the respondents knowingly subjected him to a substantial risk of physical harm, to unnecessary pain caused by the handcuffs and the restricted position for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation. The use of the hitching post under these circumstances violated the basic concept underlying the Eighth Amendment which is nothing less than the dignity of man.

*Id*. (internal quotations and citation omitted). Accepting Plaintiff's allegations as true and construing the evidence in the light most favorable to Plaintiff, he has stated a violation of his constitutional rights. Like the prisoner in *Hope*, Plaintiff was subjected to a restricted position for many hours (up to twelve hours and no less than six hours), forced to defecate on himself when denied a bathroom break, and not provided any other form of relief.

---

[17](...continued)
continues to exhibit behavior of self harm or harm to others will physical restraint be used. *See* Plaintiff's Response, Exhibit 28 at electronic page 18, GCDC Policy and Procedures Manual, § 4.09 – Use of Physical Restraining Devices. The policy further provides that "[n]o inmate will remain in restraint for more than 6 hours with out [sic] observation by the Medical Staff." *Id*.

Defendants claim they are not liable for any constitutional violations resulting from the restraint because their involvement ceased once Plaintiff was restrained. *See* Defendants' Motion, Material Facts at 6, ¶ 27 ("McGill and Daughtery were not involved in any events which occurred between the time [Plaintiff] was placed in the [restraint] chair and the time he was released."). Because Defendants were responsible for Plaintiff's restraint, a reasonable inference from the facts alleged is that Plaintiff remained in restraint at the direction and control of Defendants. A question of fact exists as to whether Defendants knew the restraint resulted in an excessive risk of harm to Plaintiff.

In sum, Plaintiff has alleged facts sufficient to demonstrate the restraint subjected him to a sufficiently serious risk of harm to satisfy the objective component of an Eighth Amendment claim. In addition, Plaintiff has alleged facts sufficient to demonstrate Defendants acted with deliberate indifference with respect to the restraint. Defendants, therefore, are not entitled to summary judgment on grounds of qualified immunity. Construing the evidence in the light most favorable to Plaintiff and drawing reasonable inferences from those facts, genuine issues of material fact exist regarding Plaintiff's claim challenging use of the restraint chair and preclude summary judgment in favor of Defendants.

### b.  <u>Denial of Access to Mental Health Treatment</u>

As part of the claim raised in Count III of the Second Amended Complaint, Plaintiff further alleges that for the entire period of his incarceration at GCDC he was denied medical treatment to address his mental health needs despite repeated requests to Defendants McGill and Daughtery. "[M]edical treatment for inmates' . . . psychological or psychiatric care" is

25

included as part of the medical care a State is constitutionally obligated to provide to incarcerated persons. *Ramos*, 639 F.2d at 574. *See also Greason v. Kemp*, 891 F.2d 829, 834 (11th Cir. 1990) ("[D]eliberate indifference to an inmate's need for mental health care is actionable on eighth amendment grounds.") (collecting cases from the federal circuit courts of appeal).

The record includes a single Request to Staff dated July 30, 2007, pursuant to which Plaintiff made the following request:

> You told me when I first came in to jail on 3-17-06 the only way to receive meds I was on (Lithium) was thru my attorney. Who does he need to talk to or how can he get this done. I really need my meds. I have a lot of problems without them.

*See* Special Report, Exhibit 4. An individual named Stallings provided this response to Plaintiff: "You have to have your attorney request the Court to have a Psych evaluation done on you in order to receive such medication." *See id.*

The record does not include any further requests or grievances filed by Plaintiff. Yet, Plaintiff alleges that he submitted numerous requests to staff related to mental health

treatment and Defendants refused to respond to these requests.[18]   Defendants have not disputed Plaintiff's allegations.[19]

Instead, Defendants rely on the instructions provided in the facility's response to Plaintiff's Request to Staff as a basis for justifying Plaintiff's denial of medication or treatment.  *See* Defendants' Motion at 16 ("When Plaintiff sent in a Request to Staff to the facility's nurse requesting to be placed on Lithium, the Nurse explained that for him to be placed on this psychiatric medication, his attorney needed to request a psychiatric evaluation through the court system.").   *See also id*. ("[T]he facility's nurse instructed Plaintiff regarding the correct steps to take to obtain any necessary psychiatric drugs.").

Defendants constitutional duty to provide appropriate mental health care cannot be delegated to Plaintiff's court-appointed attorney. A reasonable inference to be drawn from Defendants' response is that GCDC refused to provide medical treatment for Plaintiff's mental health needs.

---

[18]Attached to the Special Report is a document entitled Grady County Law Enforcement Center / Incidents for Offender / Langford, Norman Joe.  *See* Special Report, Attachment 2.  This log does not identify, in each instance, the nature of the requested medical care, or the disposition of the request, if any, by jail officials.  *See id*. at 20 (requests made in September 2006); at 16 (requests made in November 2006); at 7 (requests made in August 2007); at 6 (requests made in September/October 2007); and at 4 (requests made in December 2007). The log, however, provides at least some substantiation of Plaintiff's allegations.  In addition, during his deposition, Plaintiff testified he made repeated requests to Defendants Daughtery, McGill and Wyatt and that these Defendants had a long history with Plaintiff and knew about his mental health problems and history of suicide attempts.  *See* Plaintiff's Response [Doc. #127], Exhibit 1, Plaintiff's Deposition at 110-111.

[19]Nor have Defendants moved for summary judgment on Plaintiff's claims on grounds of failure to exhaust administrative remedies.  *See* 42 U.S.C. § 1997e(a).

As detailed above, Plaintiff made a second suicide attempt approximately five months after submitting the Request to Staff.[20] Even after this second attempt, no medical evaluation was performed and no medication provided to Plaintiff.  Defendants attempt to abdicate their responsibility stating that they "clearly would not have been the appropriate individuals to prescribe or provide psychiatric medication." *See* Defendants' Motion at 16.  Yet, Plaintiff's claim is based on Defendants' own conduct in preventing Plaintiff from obtaining access to any mental health care.  As the Tenth Circuit has held: "deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Sealock v. State of Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).  Indeed, a reasonable inference to be drawn from the response Plaintiff received, and relied upon by Defendants in moving for summary judgment, is that prison officials not only prevented treatment but outright denied treatment or access thereto.

Defendants further submit that "Plaintiff had not even been taking his medications prior to the time he was incarcerated." *See* Defendants' Motion at 16.  Defendants overstate the record.  Plaintiff testified he had been in prison on a previous conviction and had been released from prison for only a few months prior to his incarceration at GCDC.  Plaintiff

---

[20]This suicide attempt occurred approximately five months after a court-ordered competency evaluation of Plaintiff by Peter Rausch, Ph.D., a forensic psychologist.  Dr. Rausch opined that Plaintiff was "at increased risk for suicide if he receives a sentence that he finds unfavorable (i.e. incarceration in the state penal system)."  He further opined that "[i]f such an outcome to his legal case occurs, he should be closely monitored." *See* Plaintiff's Supplemental Response [Doc. #177], Exhibit 2, Competency Evaluation, Peter Rausch, Ph.D.

testified that during that two month period, he "checked himself into the Taliaferro Mental Health Center" approximately three times for purposes of continuing on his medication. *See* Plaintiff's Response at 23 and at Exhibit 1, Plaintiff's Deposition at 36. Plaintiff's testimony finds support in the GCDC's incident log which includes the following entry dated April 5, 2006:

> Medcation [sic]
>
> Inmate Langfords meds are not empty but are showing empty. So he has not had them in a while. Nurse Katy said to write incident about it in case it had been discontinued. And then to take the bottle to first in the morning to see what was going on. End of report.

*See* Special Report, Exhibit 2 at 24.[21] The entry signifies Plaintiff had been on medication at some point immediately prior to or at the outset of his incarceration at GCDC.

In addition, Plaintiff has submitted evidence showing that during other periods of incarceration he was provided medication by jail officials for his mental health needs. For example, when Plaintiff transferred from GCDC to Lawton Correctional Facility (LCF) almost immediately, officials at LCF started Plaintiff on Risperdal, an antipsychotic medication. *See* Plaintiff's Response [Doc. #127], Exhibits 23-24.[22] Therefore, contrary to Defendants' claim, the record supports an inference that Plaintiff required medication for treatment of his mental health needs.

---

[21]There is no evidence in the record regarding any follow-up by GCDC officials regarding Plaintiff's medication.

[22]Prison officials at LCF provided the following response to a request to staff regarding Plaintiff's mental health treatment: "Arrived LCF on 3-21-08; seen for counseling on 3-31-08; started Risperdal 4-11-08." *See* Plaintiff's Response [Doc. # 127], Exhibit 23, Request to Staff.

Defendants further attempt to avoid liability relying on the following alleged policy of GCDC:

> It is the policy of the Grady County Detention Center to take inmates to their previously scheduled mental health appointments at Red Rock Clinic in Chickasha, Oklahoma.  However, Red Rock will not see any inmate for an appointment unless they had an established relationship with that inmate prior to the inmate's incarceration.

*See* Defendants' Motion at 7, ¶ 29.  Defendants provide no evidence as to the source of this alleged policy.  Again, Defendants response indicates an outright denial of mental health treatment by GCDC.[23]  Any purported policies of Red Rock do not affect the constitutional duty of GCDC to provide mental health treatment where the deprivation of such treatment amounts to deliberate indifference to serious medical needs.

Defendants further respond that, as set forth in the response to Plaintiff's Request to Staff, before Plaintiff would be placed on psychiatric medication "his attorney needed to request a psychiatric evaluation through the court system." *Id*., ¶ 31.  In fact, Plaintiff did undergo competency examinations in the spring of 2007 and a competency trial was conducted in August 2007.  *See generally*, Plaintiff's Supplemental Response [Doc. #177], Exhibits 1-3. *See also* Defendant's Reply [Doc. #128], Exhibit 1.  In their Reply, Defendants

---

[23]In responding to Defendant Wyatt's Motion for Summary Judgment, Plaintiff attached excerpts of GCDC's policy and procedures manual.  The written policy provides:

> An inmate may request counseling or other pscyhological services.  If the inmate wishes to see a physician regarding emotional problems he/she may so request on a medical sheet.  If the inmate requests to see a counselor he /she may do so thru their attorney.

*See* Plaintiff's Response [Doc. #126], Exhibit 21, GCDC Policy and Procedures Manual, ¶ 6.08.

further rely on the competency proceedings as evidence that the denial of psychiatric medication to Plaintiff was appropriate.[24]   The competency proceedings, and evaluations conducted pursuant thereto, however, are not dispositive of Plaintiff's claim.  Plaintiff was deemed competent to stand trial.  That determination does not demonstrate that Plaintiff should have been denied medical treatment for his mental illness.[25]  This is especially true given Plaintiff's extensive history of mental illness and the factual allegations indicating that he received treatment for his mental illness through medication provided to him both immediately before and immediately following his incarceration at GCDC.

In sum, Plaintiff has alleged facts sufficient to demonstrate a violation of his constitutional rights.  Construing the evidence in the light most favorable to Plaintiff and drawing reasonable inferences from that evidence, Plaintiff has demonstrated that the denial of access to treatment for his mental illness was a sufficiently serious deprivation (causally related to Plaintiff's attempted suicide) to satisfy the objective component of an Eighth Amendment claim.  Similarly, the record demonstrates facts sufficient to show the subjective

---

[24]Defendants reference exhibits attached to the separately filed Reply by Defendant Wyatt [Doc. #129].  One of those exhibits includes a 1994 psychosocial assessment of Plaintiff. *See* Reply, Exhibit 2.  In the assessment report, reference is made to an attempted suicide by Plaintiff while incarcerated.  The report suggests Plaintiff may have faked the suicide attempt.  At best, this report creates a factual dispute concerning whether Plaintiff's alleged need for medication and mental health treatment was sufficiently serious, but does not, as Defendants contend, establish that the lack of treatment was "appropriate."

[25]In fact, one of the competency evaluation reports (dated May 3, 2007) includes the following diagnoses of Plaintiff: Major Depressive Disorder, recurrent, with psychotic features and Alcohol Dependence and Antisocial Personality Disorder.  *See* Plaintiff's Response [Doc. #177-4] at 3.  The examiner specifically states: "It should be noted that a person may be mentally ill, even have psychotic symptoms and still be competent to stand trial." *Id.*

component.  Defendants do not dispute that Plaintiff suffered from mental health problems, apparent from both his long history, his suicide attempts at GCDC, the evidence adduced during competency proceedings[26] and Plaintiff's repeated requests for treatment that were ignored by Defendants.[27]  Accordingly, Defendants are not entitled to summary judgment on grounds of qualified immunity as to the claims raised in Count III of the Second Amended Complaint challenging the denial/prevention of mental health treatment as a violation of his constitutional rights.  Moreover, disputed issues of material fact preclude a grant of summary judgment in favor of Defendants as to this claim.

### B.    Official Capacity Claims

Defendants Daughtery and McGill also seek dismissal of Plaintiff's claims brought against them in their official capacities alleging unconstitutional policies, practices or customs at the GCDC based on the denial of recreation and prevention and/or denial of mental health treatment.

A defendant sued in his official capacity is a different "legal personage" than one sued in his individual, or personal capacity.  *See Karcher v. May*, 484 U.S. 72, 78 (1987) ("The

---

[26]Plaintiff testified at his deposition that Bill Daughtery was further aware of his mental problems because "he had known [Plaintiff] from the past" and additionally, was present throughout Plaintiff's competency proceedings.  *See* Plaintiff's Response [Doc. #127], Exhibit 1, Plaintiff's Deposition at 109; *see also id.* at 110-111.

[27] In addition, as discussed in relation to Defendant Wyatt's motion for summary judgment, Plaintiff has included a declaration from his father, Frank Langford, stating that he made Defendants Wyatt and Daughtery aware of Plaintiff's need for medication to address his mental health problems.  *See* Plaintiff's Response [Doc. #127], Exhibit 3.  *See also* Plaintiff's Response [Doc. # 127], Exhibit 1, Plaintiff's Deposition at 107.

32

concept of 'legal personage' is a practical means of identifying the real interests at stake in a lawsuit."). A suit against government officers in their official capacities is actually a suit against the government entity that employs the officers. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir.1998) ("[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.")(citation and quotation omitted).

Defendants seek dismissal of the official capacity claims on two bases. First, Defendants state they "have no 'official capacity' with regard to making policy for the jail." *See* Defendants' Motion at 19. According to Defendants, all policymaking authority lies with a public trust created to operate the GCDC. *See id*. Defendants provide no legal analysis or factual support for this statement. Defendants merely reference an allegedly "uncontroverted fact" in Defendant Wyatt's Motion for Summary Judgment [Doc. #87]. As discussed in relation to Defendant Wyatt's Motion for Summary Judgment, *infra*, an official capacity claim against Defendants Daughtery and McGill is not solely dependent on whether these Defendants have policymaking authority, as liability against a municipal entity or other local government body may exist "even though the action is taken by an individual other than the final policymaker." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009). Therefore, without further argument or analysis by Defendants, they are not entitled to summary judgment as to Plaintiff's official capacity claims on the sole basis that they have no policymaking authority.

Second, Defendants state: "the actions of these Defendants did not constitute a violation of Plaintiff's constitutional rights, and they cannot be held liable." As analyzed in relation to Plaintiff's individual capacity claims, disputed issues of material fact exist as to whether Defendants have violated Plaintiff's constitutional rights. Summary judgment in favor of Defendants as to Plaintiff's official capacity claims, therefore, is unwarranted on this basis.

To summarize, Defendants Daughtery and McGill are entitled to summary judgment on grounds of qualified immunity as to Plaintiff's individual capacity claim in Count I of the Second Amended Complaint premised on being fed only sack lunches for the three-day period at issue from November 17 to November 19, 2006. Defendants are not entitled to summary judgment on the remaining claims in Count I of the Second Amended Complaint. Further, Defendants Daughtery and McGill are not entitled to summary judgment as to the claims raised in Counts II and III of the Second Amended Complaint. Finally, Defendants are not entitled to summary judgment with respect to Plaintiff's claims brought against them in their official capacities alleging unconstitutional policies, practices or customs.

## V.    **Motion for Summary Judgment of Defendant Shane Wyatt**

Defendant Shane Wyatt is the Jail Administrator of the GCDC. Defendant Wyatt contends Plaintiff has failed to demonstrate his personal participation in the conduct giving rise to Plaintiff's Eighth and Fourteenth Amendment claims and, therefore, that judgment as a matter of law should be entered in his favor on the individual capacity claims. Defendant Wyatt also seeks summary judgment on Plaintiff's official capacity claims.

34

Wyatt contends he has no authority to make policy for the GCDC.  He further contends Plaintiff has failed to demonstrate the violation of his constitutional rights.

In moving for summary judgment, Wyatt "adopts and incorporates" the facts submitted in support of the motion for summary judgment filed on behalf of Defendants Daughtery and McGill.  *See* Defendant Wyatt's Motion at 2.

## A.    Individual Capacity Claims

Defendant Wyatt contends Plaintiff has sued him based solely on his supervisory role over the GCDC and specifically, over Defendants McGill and Daughtery.  *See* Defendant Wyatt's Motion [Doc. #87], Material Facts at 2, ¶ 2.  "[A] supervisory relationship alone is insufficient for liability under § 1983."  *Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (citation omitted).  Instead, Plaintiff must show that an  "affirmative link exists between the [constitutional] deprivation and either the [officer's] personal participation, his exercise of control or direction, or his failure to supervise."  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997) (quotation omitted).  Contrary to Defendant Wyatt's assertion, "direct participation is not necessary."  *Poolaw*, 565 F.3d at 732.  An official may be liable where he "sets in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of h[is] constitutional rights."  *Id*. (citation omitted).

### 1.    <u>Count I – Conditions of Maximum Security Confinement</u>

Plaintiff alleges that he was placed in maximum security confinement for the three-day period at issue in Count I of the Second Amended Complaint at the direction of Defendant Wyatt.  Plaintiff does not, however, allege facts demonstrating that Defendant Wyatt was involved – either through personal participation or by directing or failing to supervise the actions of Defendants Daughtery and McGill – in the decisions surrounding the conditions of maximum security confinement.  During his deposition, Plaintiff was asked whether Defendant Wyatt had anything to do with the conditions of confinement for this time period.  Plaintiff responded: "As far as I know [Defendants Daughtery and McGill] were doing what he had asked.  As far as I know.  I mean, that's their supervisor, so I'm sure that's what it was."  *See* Defendant Wyatt's Motion, Exhibit 1, Plaintiff's Deposition at 48.  Plaintiff's conjecture is insufficient to establish individual liability against Defendant Wyatt.  Because Plaintiff fails to allege facts sufficient to establish Defendant Wyatt violated his constitutional rights with respect to the claim raised in Count I, Defendant Wyatt is entitled to qualified immunity and summary judgment should be entered in his favor as to this individual capacity claim.

### 2.    <u>Count II – Denial of Recreation</u>

As set forth, Plaintiff alleges a complete denial of outdoor exercise during his incarceration at GCDC.  In addition, Plaintiff alleges a denial of any form of recreation for the entire period of his incarceration in the old jail and a substantial majority (if not all) of

the period of his incarceration in the new jail.  A reasonable inference to be drawn from the facts alleged is that as Jail Administrator, Defendant Wyatt personally participated in the deprivation of outdoor exercise and recreation.  Significantly, Wyatt does not dispute that Plaintiff was denied outdoor exercise or recreation.  And, perhaps even more significantly, in moving for summary judgment, Defendant Wyatt does not even specifically address this claim.  In Defendant Wyatt's motion, he makes the following statement regarding his personal participation:

> In this case, Plaintiff has made only conclusory allegations but has wholly failed to demonstrate that Wyatt personally participated in placing him in a maximum security cell, taking items from him following his suicide or escape attempt, placing in the SLAM cell and the restraint chair following his suicide attempt, advising him regarding psychiatric medication, or in any of the events about which Plaintiff complains.

*See* Defendant Wyatt's Motion for Summary Judgment [Doc. # 87] at 6; *see also id*. at Material Facts, ¶¶ 1-6.  Defendants' statement omits any reference to Plaintiff's claim in Count II of the Second Amended Complaint.

As set forth above in the analysis of this claim as to Defendants Daughtery and McGill, disputed issues of material fact exist with respect to this claim.  As Jail Administrator, a reasonable inference to be drawn from the evidence is that Defendant Wyatt set in motion the circumstances leading to Plaintiff's denial of recreation.[28]  And, the risk of

---

[28]Pursuant to Oklahoma law, the sheriff or designated employee is charged with monthly inspections of the county jail which require an in-person visit and inquiry "into the condition of each
(continued...)

harm was sufficiently obvious that when viewing the evidence and the reasonable inferences to be drawn from that evidence in the light most favorable to Plaintiff, Defendant Wyatt acted with deliberate indifference with respect to the denial of outdoor exercise and recreation. Accordingly, Defendant Wyatt is not entitled to summary judgment with respect to this individual capacity claim on grounds of qualified immunity. Disputed issues of material fact remain as to whether Defendant Wyatt violated Plaintiff's constitutional rights.

### 3.    Count III - Deliberate Indifference to Plaintiff's Mental Health

Defendant Wyatt further claims he is not liable in his individual capacity for Plaintiff's claims raised in Count III of the Second Amended Complaint alleging deliberate indifference to his mental health based on use of the restraint chair and denial of access to medication and treatment.

The record fails to show that Defendant Wyatt personally participated in the conduct surrounding use of the restraint chair following Plaintiff's suicide attempt on December 28, 2007. Plaintiff does not point to any specific facts demonstrating Wyatt's personal participation, exercise of control or direction, or failure to supervise.[29] Defendant Wyatt is

---

[28](...continued)
prisoner at least once each month." Okla. Stat. tit. 57, § 43. This statutory duty further evidences Defendant Wyatt's personal participation, as Jail Administrator, in Plaintiff's complete denial of outdoor exercise and recreation.

[29]Plaintiff testified that he heard McGill and Daughtery say that Wyatt had told them to keep Plaintiff in restraint for twelve hours. *See* Plaintiff's Response [Doc. # 127], Exhibit 1, Plaintiff's Deposition at 93, 116. However, Plaintiff further testified he did not see Wyatt at the time he was placed in restraint and did not speak to Wyatt during the twelve hours he was in restraint. *See id*. at 92, 96-97. Plaintiff, therefore, has failed to demonstrate Defendant Wyatt's personal participation in use of the restraint chair.

entitled to summary judgment with respect to Plaintiff's individual capacity claim in Count III of the Second Amended Complaint based on events surrounding use of the restraint chair.

Defendant Wyatt is not, however, entitled to summary judgment with respect to Plaintiff's claim that he was denied medical treatment for his mental illness for the duration of his incarceration at GCDC. A reasonable inference to be drawn from the facts alleged is that as Jail Administrator, Defendant Wyatt personally participated in the deprivation of Plaintiff's treatment particularly insofar as such treatment was denied pursuant to either a policy requiring that he request treatment through his court-appointed attorney or that he must have a pre-existing relationship with a treatment facility. Significantly, Wyatt does not dispute that Plaintiff was denied treatment. Moreover, Plaintiff attaches the affidavit of his father, Frank Langford. Mr. Langford states that he spoke with both Shane Wyatt and Bill Daughtery about "trying to get Norman on his medication for his diagnosed mental illness and suicide attempts." According to Mr. Langford, these Defendants were "well aware of Norman's mental health history and suicide attempts." *See* Plaintiff's Response [Doc. # 126], Exhibit 3, Declaration of Frank Langford. *See also, supra*, discussion at footnote 18.

In his Reply, Defendant Wyatt states: "[A]s the evidence demonstrates, Plaintiff's doctors determined Plaintiff did not have a serious medical need for mental health treatment during the relevant time period." *See* Reply [Doc. #129] at 5. In support, Defendant Wyatt cites "uncontroverted facts" ¶¶ 2-7 of the Reply. *See id*. However, the record demonstrates the facts upon which Defendant Wyatt relies are controverted. While the record includes

evidence from a 1994 report that Plaintiff might have faked a suicide attempt in jail, and that *for purposes of determining competency to stand trial* Plaintiff did not require mental health treatment, the record also includes ample evidence, as discussed in relation to Defendant Daughtery and McGill's motion for summary judgment, that Plaintiff has a long history of significant mental health problems for which he has been receiving treatment from the Oklahoma Department of Corrections and other entities.

Because, viewing the evidence and reasonable inferences to be drawn from that evidence in the light most favorable to Plaintiff, his allegations sufficiently state a constitutional violation, Defendant Wyatt is not entitled to summary judgment on grounds of qualified immunity. Moreover, as detailed above, disputed issues of material fact exist with respect to whether Defendant Wyatt violated Plaintiff's constitutional rights and Defendant Wyatt's motion for summary judgment should be denied.

### B. Official Capacity Claims

Plaintiff also brings claims against Defendant Wyatt in his official capacity. As set forth, such a claim is, in essence, a claim against the government entity that employs Wyatt. The unconstitutional acts of an employee are insufficient, standing alone, to establish liability against a municipal entity or other local government body. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) (a municipality cannot be held liable on a *respondeat superior* theory). Instead, a § 1983 plaintiff must prove he suffered a deprivation of constitutional or other federal rights

resulting from (1) an express policy or custom executed by the entity; (2) a longstanding practice or custom of the entity; or (3) the conduct of a final policymaker. *See Moss*, 559 F.3d at 1168-1169; *see also Boyer v. Board of County Com'rs of County of Johnson County*, 922 F. Supp. 476, 486 (D. Kan. 1996) (*quoting Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734-735 (7th Cir. 1994)).   Under the third scenario, because the employee has final policymaking authority, the employee's actions are directly, not vicariously, attributable to the municipality. *See Simmons v. Uintah Health Care Special Dist.* 506 F.3d 1281, 1285 (10th Cir. 2007) ("[A] municipality is responsible for . . . actions taken by final policymakers, whose conduct can be no less described as the "official policy" of a municipality.")

In moving for summary judgment as to Plaintiff's claims brought against him in his official capacity, Defendant Wyatt first argues Plaintiff has failed to allege facts demonstrating he is a policymaker for the GCDC.  Second, Defendant Wyatt argues Plaintiff has failed to allege sufficient facts demonstrating that the unconstitutional conduct about which Plaintiff complains resulted from any policy or custom.  Each argument is addressed in turn.

### 1.   Wyatt as Official with Policymaking Authority

Whether an individual has final policymaking authority for purposes of establishing liability against a municipal entity or local government body is a question of state law. *See Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995).  Under Tenth Circuit precedent,

the following three elements help determine whether an individual has final policymaking authority: (1) whether the individual is meaningfully constrained by policies not of that official's own making; (2) whether the official's decision is final, that is whether the decision is subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority. *Id.* at 448. If an individual is a final policymaker, even a single action by that policymaker can subject a municipal entity or local governmental body to liability. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988); *see also Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1212 (10th Cir. 2007) (accord).

In moving for summary judgment on grounds that he is not a final policymaker, Defendant Wyatt does not identify or provide any analysis of applicable Oklahoma law. Similarly, Defendant Wyatt does not address the three elements guiding the analysis as dictated by Tenth Circuit precedent.

Instead, as support that he lacks final policymaking authority, Defendant Wyatt submits his own affidavit. Defendant Wyatt states that he is employed as the Jail Administrator at GCDC. *See* Defendant Wyatt's Motion [Doc. #87], Exhibit 2, Affidavit of Shane Wyatt, ¶ 1. He further states that a public trust, The Grady County Criminal Justice Authority (the Trust), is responsible for the day-to-day operations and final oversight of the GCDC. *See id*., ¶¶ 3-5. In addition, Defendant Wyatt states that "[a]ll policies and procedures for the Grady County Detention Center must ultimately be approved by the Trust,

and the Trust is the final authority in setting policies and procedures for the facility." *See id*.¶ 6. This latter statement is not supported by any evidence. Absent from Defendant Wyatt's affidavit are excerpts from the Trust document itself or an attachment of the Trust document to the affidavit.[30] The statement that the Trust is the final authority in setting policies and procedures is merely a legal conclusion and insufficient to support a summary judgment motion. *See Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir. 1970) (where, in support of immunity defense to federal prisoner's action for damages, defendants submitted affidavit stating that the acts about which plaintiff complained were matters committed by law to their control or supervision, such statement was "merely a legal conclusion on which immunity is made to rest" and "insufficient to satisfy the requirements of Rule 56"). *See also Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (reversing district court's grant of summary judgment and finding that district court erred in relying on doctor's affidavit opining that treatment provided to prisoner was "within the accepted standard of care" where affidavit provided no basis for conclusion; "conclusory allegations without specific supporting facts have no probative value") (citations omitted).

---

[30]The Trust document has been attached to the Motion to Dismiss filed on behalf of Defendants Kieran McMullen and Jack Porter. See Motion [Doc. # 155], Exhibit 1, Trust Indenture. The Court notes that nothing in the Trust Indenture itself expressly provides either that the Trust has sole policymaking authority for the operations of the jail or that Defendant Wyatt lacks any policymaking authority.

In contradiction of Defendant Wyatt's statements contained in his affidavit, Plaintiff submits portions of the Grady County Law Enforcement Center Policy and Procedure Manual (Manual).  The Manual shows it was revised on August 28, 2006, and the revisions were completed by Defendant Wyatt.  *See* Plaintiff's Response [Doc. # 126], Exhibit 21.  In addition, the Manual includes the following statement:

**Standards**

In the "Minimum Inspection Standards for Detention Center Operation" Detention Center Administrators are required to state publicly what the jail does and how it executes its function.  *To this end the Detention Center Administrator has developed written policies and procedures for the daily management and operation of the Center.*  This Policy and Procedure Manual then demonstrates compliance with state standards.

*See id*. (emphasis added).[31]

Although scant, the existing factual record presents a genuine dispute as to whether Defendant Wyatt has final policymaking authority.  *Compare Randle*, 69 F.3d at 449 (reversing district court's grant of summary judgment where disputed issues of material fact existed with respect to whether City officials exercised final policymaking authority in the area of personnel matters).  Defendant Wyatt, therefore, is not entitled to summary judgment

---

[31]Plaintiff has attached other portions of the Manual in his response to Defendant Daughtery and McGill's Motion to Dismiss.  The Manual also includes these statements:

The Jail Administrator will be responsible for annual review and revisions as warranted.

Any exception to this procedure will require prior written approval from the Jail Administrator.

*See* Plaintiff's Response [Doc. #127], Exhibit 28 at electronic pages 16-17.

with respect to Plaintiff's official capacity claims on grounds that he is not a final policymaker.[32]

### 2.        Longstanding Practice or Custom as Basis for Wyatt's Official Capacity Liability

To establish liability against a municipal entity or other local government body, Plaintiff must show first that "a municipal employee committed a constitutional violation" and second that "a municipal policy or custom was the moving force behind the constitutional deprivation." *Walker v. City of Orem*, 451 F.3d 1139, 1152 (10th Cir. 2006). Here, Plaintiff alleges two customs or practices resulted in unconstitutional conditions of confinement. First, he claims the near complete denial of recreation for the duration of his incarceration at GCDC constitutes an unconstitutional  custom or practice. Second, he alleges the denial of medical treatment for his mental illness constitutes an unconstitutional custom or practice.  In moving for summary judgment Defendant Wyatt, adopting the "material facts" of Defendants Daughtery and McGill, claims it is a policy of the GCDC to

---

[32]Under Oklahoma law, where a public trust is charged with operation of a county jail "every reference in statute or rule to any duty or responsibility imposed upon the sheriff or any jailer to operate, manage or provide any service to any person in the custody of such facility . . .  shall be deemed applicable to and imposed upon the public trust . . . ."  Okla. Stat. tit. 19, § 513.2(A). Oklahoma law gives the county sheriff "or such person designated by law in his place" charge of "the county jail of his county and of all persons by law confined therein . . ."  Okla. Stat. tit. 57, § 47. Thus, Okla. Stat. tit. 19, § 513.2(A) in conjunction with Okla. Stat. tit. 57, § 47, certainly would impose responsibility on the Trust to lawfully operate the GCDC.  However, these statutes do not definitively answer, on the present record in this case, the question as to whether Defendant Wyatt acted as a final policymaker on behalf of the Trust. Significantly, the Trust Indenture authorizes the Trust to hire employees to "properly operate the business of the Trust," *see* Trust Indenture (discussed *supra* footnote 30) at 5, ¶VI(E), and it is undisputed that Defendant Wyatt, as Jail Administrator, is an employee hired to operate the jail.  The GCDC Manual raises at least an inference that the Trust has delegated some policymaking decisions to Defendant Wyatt.

require a request for mental health treatment through a court-appointed attorney and/or that mental health treatment is provided only to those inmates with pre-incarceration relationships with particular treatment facilities. Plaintiff further challenges these alleged policies as unconstitutional.[33]

As set forth above in relation to the analysis of the motion for summary judgment filed by Defendants Daughtery and McGill, Plaintiff has alleged facts sufficient to establish the violation of a constitutional right as to both the denial of recreation and the denial of mental health treatment. The long-term nature of these deprivations, the inaction on the part of prison officials, including Defendant Wyatt, and the adoption of policies that, in effect, abdicate responsibility for provision of mental health treatment, constitute sufficient bases upon which to withstand summary judgment on Plaintiff's claims against Wyatt in his official capacity. *See, e.g., Cannon v. City and County of Denver*, 998 F.2d 867, 877 (10th Cir. 1993) (a municipality may be held liable for an illegal practice if the practice "is so permanent and well-settled as to constitute a custom or usage with the force of law"). Moreover, to the extent the Trust, as policymaker, approved decisions by Defendant Wyatt and the basis for those decisions, the Trust's ratification is sufficient to impose municipal liability. *See Moss*, *supra*, 559 F.3d at 1169 ("[I]f a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers

---

[33]Defendant Wyatt further states "it is the GCDC's policy to take inmates to scheduled mental health appointments, and Plaintiff was evaluated on two occasions." *See* Defendant Wyatt's Motion [Doc. #87] at 9. This is yet another misstatement of the record. Plaintiff was evaluated on two occasions for purposes of a court-ordered competency evaluation, not based on a "scheduled mental health appointment" to address his ongoing mental health needs.

approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality."). The present record is not sufficiently developed to make any definitive determination in that regard. Accordingly, Defendant Wyatt's motion for summary judgment should be denied as to Plaintiff's official capacity claims.[34]

## VI.   Motion to Dismiss of Defendants McMullen and Porter

Defendants McMullen and Porter are trustees of Defendant, the Grady County Criminal Justice Authority, a public trust (the Trust).[35] Plaintiff previously requested to amend his Complaint to add official capacity claims against these defendants and the Trust based on information provided by Defendant Shane Wyatt in an affidavit submitted in support of his motion for summary judgment. As set forth above, in that affidavit, Defendant Wyatt identified the Trust as a public trust, responsible for the day-to-day operations of the GCDC. *See* Motion for Summary Judgment of Shane Wyatt [Doc. #87], Exhibit 2, Affidavit of Shane Wyatt, ¶¶ 3-5. In addition, Defendant Wyatt identified the Trust as the "final authority for setting policies and procedures for the facility." *Id.*, ¶ 6.

The Court granted Plaintiff's motion and allowed amendment of his complaint to add official capacity claims against parties including Defendants McMullen and Porter. *See* Order [Doc. #125]. Plaintiff's official capacity claims against the Defendants are based on

---

[34]The Trust, a named defendant in this action, has filed an answer to Plaintiff's Second Amended Complaint, *see* Answer [Doc. #156]. No dispositive motion on behalf of the Trust has been filed.

[35]Defendant McMullen is also named in his official capacity as the Sheriff of Grady County. *See* Plaintiff's Second Amended Complaint at electronic page 14. As such, he would have statutory duties relating to the jail of his county. *See* Okla. Stat. tit. 57 § 47.

47

the alleged unconstitutional customs or policies at the GCDC which, as set forth previously, include the denial of outdoor exercise and recreation and mental health treatment.

Defendants McMullen and Porter move for dismissal of these claims. Rather than address the merits of the claims, Defendants contend they lack "final policymaking authority" with respect to operation of GCDC. Defendants claim "it is the Trust which is the final policymaking authority and the proper party to any official capacity claim." According to Defendants they "do not have an official capacity over the Grady County Detention Center" and, therefore, Plaintiff has failed to state a claim against them.[36]

Defendants' argument is disingenuous. Plaintiff's official capacity claims against Porter and McMullen are claims against the Trust (and, ultimately, Grady County). Therefore, even if Defendants are not official policymakers and, therefore, cannot through their individual actions subject the Trust to liability, if the Trust's policies or practices are unconstitutional, Defendants may be sued in their official capacities.

No dispositive motion has been filed on behalf of the Trust and, as stated, Defendants McMullen and Porter have not addressed the merits of Plaintiff's official capacity claims. Therefore, no sufficient basis for dismissal of Plaintiff's official capacity claims is before the

---

[36]Defendants further move for dismissal of individual capacity claims on grounds of lack of personal participation. As the Court construes Plaintiff's claims, he has named these Defendants only in their official capacities and, therefore, the Court need not address issues of liability against these Defendants in their individual capacities.

Court. Because Defendants Porter and McMullen are properly named in their official capacity, dismissal on grounds that they lack "official capacity" should be denied.[37]

## VII.   Motion to Dismiss of Defendants Chris Angel and John Mosley

In his Second Amended Complaint, Plaintiff named as additional defendants Chris Angel and John Mosley. Plaintiff identified each of these individuals as trustees of the Trust. Defendants Angel and Mosley seek dismissal of the claims raised against them in the Second Amended Complaint. In moving for dismissal, Defendants have relied on matters outside the pleadings. The Court, therefore, construes Defendants' motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). *See also* Order [Doc. #158] (notifying Plaintiff of the

---

[37]This is not the first time Defendants' counsel has purposely clouded the legal issues concerning official capacity claims brought against a county. In a similar case involving an official capacity claim against a county sheriff, the defendants, represented by the same counsel as the Defendants in this action, argued that the plaintiff "was incorrect in bringing this action against the Sheriff in his official capacity and should have brought it instead against the Justice Authority [a public trust]." As in this case, there was no dispute that ultimate liability on any official capacity claim lay with the county. Counsel was admonished as follows:

> The Court made it crystal clear to counsel on more than one occasion that the Court does not appreciate such games; and Defendants' counsel confirmed that he would represent the County no matter which entity was named. If Sequoyah County would prefer to be sued through the Justice Authority, its counsel should have cooperated with Plaintiff and with the Court to substitute that party rather than waste the Court's time with motions for summary judgment when all parties are clear that Sequoyah County is ultimately liable if a civil rights violation took place in any event.

*Palmer v. Board of County Commr's of Sequoyah County*, No. CIV-07–12-RAW, 2007 WL 3407057 at * 2 (E.D. Okla. Nov. 9, 2007) (unpublished op.). This Court cautions that counsel's continued insistence on making legal contentions unwarranted by the law -- as well as counsel's continued misstatements and overstatements of the factual record such as those noted in this Report -- will subject counsel to possible sanctions pursuant to Fed. R. Civ. P. 11(b).

provisions of Fed.R.Civ.P. 56 to the extent the motion relies upon affidavits or other documents).

Defendants Angel and Mosley each have submitted affidavits stating: "I have never been a trustee of the Grady County Criminal Justice Authority."  *See* Motion to Dismiss [Doc. #157], Exhibit 1, Affidavit of Chris Angel, ¶ 3 and Exhibit 2, Affidavit of John Mosley, ¶ 3.  In responding to Defendants' Motion to Dismiss, Plaintiff states that he had a family member call the office of the Trust and the family member was told that during the period of Plaintiff's incarceration at GCDC, the trustees of the Trust included Defendants Angel and Mosley.  *See* Plaintiff's Response [Doc. #167] at 2. However, Plaintiff provides no admissible evidence to support his allegation.  Nor does Plaintiff identify any other factual or legal basis upon which to impose liability on Defendants Angel and Mosley. Because Defendants are not trustees of the Trust and otherwise do not hold positions which allow them to be responsible for the policies and procedures of the Trust, Defendants are entitled to summary judgment as to Plaintiff's official capacity claims brought against them.[38]

---

[38]Indeed, on the present record, there is no evidence demonstrating the requisite state action to support a claim under § 1983 against Defendants Mosley and Angel.  *See Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) ("Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting 'under color of state law.'") *citing* 42 U.S.C. § 1983; *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").  Where allegations of unconstitutional conduct are alleged against a private individual, no § 1983 claim for relief has been stated.

## VIII.  **Motion to Dismiss of Defendant GCDC**

This Court previously entered a Report and Recommendation recommending dismissal of the GCDC as a defendant in this action, and that recommendation was adopted. *See* Report and Recommendation [Doc. #93] and Order Adopting [Doc. #116]. In fact, Plaintiff conceded that the GCDC should not be a defendant in this action. *See* Plaintiff's Motion to Ask the Court to Release Grady County as a Defendant [Doc. #71].  After the filing of the Report and Recommendation, Plaintiff was allowed leave to file a Second Amended Complaint. *See* Order [Doc. #125].  Thereafter, on March 16, 2009, Plaintiff filed his Second Amended Complaint [Doc. #131].  Perhaps through inadvertence, Plaintiff listed GCDC as a Defendant in the Second Amended Complaint.  However, as previously determined by the Court, GCDC is not a suable entity and therefore is not a proper defendant in this § 1983 action.  GCDC has again moved for its dismissal from this action.  *See* Defendant's Motion to Dismiss and Brief in Support [Doc. #143].  And, Plaintiff has again stated that he has no objection to dismissal of the GCDC as to the claims raised in the Second Amended Complaint.  *See* Plaintiff's Reply to Defendant Grady County Detention Center's Motion to Dismiss and Brief in Support [Doc. #154].  The analysis governing why GCDC should be dismissed is set forth in the Court's previous Report and Recommendation and need not be repeated here.  Defendant GCDC's motion to dismiss should be granted.

## IX.   __Plaintiff's Motion to Compel Discovery__

Plaintiff has filed a Motion to Compel Discovery [Doc. #165] pursuant to which he seeks to compel responses to requests for production of documents from Defendant McGill. The requested documents include various inmate records for an individual named Michael Richardson.  Plaintiff states that he intends to call Mr. Richardson as a witness at trial. According to Plaintiff, Mr. Richardson celled with Plaintiff for a period of approximately one year and during that time, Richardson too was denied outdoor exercise and recreation. Plaintiff also alleges Mr. Richardson  was strapped to the restraint chair on several occasions for 12 hours at a time as punishment.  In addition, Plaintiff alleges Mr. Richardson has knowledge of the fact that Plaintiff requested from Defendants medication for his mental health needs but did not receive responses to his requests.

Plaintiff seeks to compel production of documents concerning Mr. Richardson's incarceration at GCDC including daily logs, incident reports, cell file reports, medical reports, and requests to staff.  Defendant McGill objects to production of these documents on grounds that Plaintiff's request is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, Defendant McGill objects to production of all documents on grounds that the information might be used to threaten or harass Mr. Richardson.  Defendant McGill further objects to production of medical documents without appropriate releases from Mr. Richardson.

Plaintiff does not state he needs the documents for purposes of the Defendants' pending summary judgment motions.  Indeed, he identifies Mr. Richardson as an expected witness for trial.

At this juncture, Plaintiff has not articulated sufficient grounds for compelling production of the requested documents.  Proof of Plaintiff's Eighth and Fourteenth Amendment claims is not dependent on conditions of confinement endured by other inmates. Moreover, Defendants have not, on the present record, submitted evidence to challenge Plaintiff's allegations that he made numerous requests for medication to which he received no response and, therefore, the Court has accepted these allegations as true for purposes of the pending summary judgment motions.  Therefore, it is recommended that Plaintiff's Motion to Compel be denied.

Because, however, it has been recommended that Plaintiff's claims be allowed to proceed against some of the Defendants, Plaintiff may be able to establish the need for the documents at some future stage in the litigation.  Accordingly, Plaintiff should not be precluded from moving to compel production of these documents in the event that, as this matter proceeds, the claims and defenses raised require production of the documents.

## X.    <u>Summary of Recommendations</u>

Summary judgment on grounds of qualified immunity should be entered in favor of Defendants McGill and Daughtery as to the individual capacity claim raised in Count I of the Second Amended Complaint alleging unconstitutional conditions of confinement based on Plaintiff being fed sack lunches for a three-day period from November 17 through

November 19, 2006.  Summary judgment should be denied as to all other individual capacity claims brought against Defendants McGill and Daughtery in Count I.  In addition, summary judgment should be denied as to all individual capacity claims brought against Defendants McGill and Daughtery in Counts II and III of the Second Amended Complaint.  Further, summary judgment should be denied as to Plaintiff's official capacity claims brought against these Defendants.

Summary judgment on grounds of qualified immunity should be entered in favor of Defendant Wyatt with respect to all individual capacity claims raised in Count I of the Second Amended Complaint and the claim raised in Count III of the Second Amended Complaint related to use of the restraint chair following Plaintiff's December 2007 suicide attempt.  Summary judgment should be denied as to all other individual capacity claims brought against Defendant Wyatt.  In addition, summary judgment should be denied with respect to Plaintiff's official capacity claims brought against Defendant Wyatt.

The Motion to Dismiss of Defendants McMullen and Porter should be denied.  As set forth above, Plaintiff has brought only official capacity claims against these Defendants. Plaintiff's official capacity claims against these Defendants should proceed.

The Motion to Dismiss of Defendants Angel and Mosley, construed as a motion for summary judgment, should be granted and judgment as a matter of law should be entered in favor of these Defendants.

The Motion to Dismiss of Defendant Grady County Detention Center should be granted and the Detention Center should be dismissed as a defendant in this lawsuit.

Plaintiff's Motion to Compel Discovery should be denied.

In addition, the Court reiterates that no dispositive motion has been filed on behalf of Defendant, The Grady County Criminal Justice Authority, a public trust.

## **RECOMMENDATION**

For the reasons set forth, it is recommended that:

(1) the Motion for Summary Judgment of Defendant Shane Wyatt [Doc. #87] be granted in part and denied in part;

(2) the Motion for Summary Judgment of Defendants Bill Daughtery and Larry McGill [Doc. #88] be granted in part and denied in part;

(3) the Motion to Dismiss of Defendants Kieran McMullen and Jack Porter [Doc. #155] be denied;

(4) the Motion to Dismiss of Defendants Chris Angel and John Mosley [Doc. #157], construed as a motion for summary judgment, be granted;

(5) the Motion to Dismiss of Defendant Grady County Detention Center [Doc. #143] be granted; and

(6) Plaintiff's Motion to Compel Discovery [Doc. #165] be denied.

## **NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file an objection to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by October __13th__, 2009. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right

to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred in this matter and terminates the referral.

ENTERED this __21st__ day of September, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE